UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 06-256-GWU


IMA J. CARMACK,                                                        PLAINTIFF,


VS.                            **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.


**INTRODUCTION**

The plaintiff brought this action  to obtain judicial review of an administrative

denial of her applications for Supplemental Security Income (SSI) and Disability

Insurance Benefits (DIB).  The appeal is currently before the Court on cross-motions

for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
      claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities?  If yes, proceed to

1

Carmack

Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

Carmack

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Carmack

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Carmack

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Carmack

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Carmack

may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).    Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley  v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Carmack suffered from atherosclerotic coronary artery disease, fibromyalgia, hypertension, and chronic obstructive pulmonary disease. (Tr. 19).  The functional restrictions caused by these conditions limited the plaintiff to medium level work which did not involve the climbing of ladders, according to the ALJ. (Id.).  He believed that she could return to her past relevant job as a cook (Tr. 20) or, in the alternative, light and sedentary jobs identified by the vocational expert (Tr. 21).  Accordingly, her claims for benefits were denied. (Tr. 22).

The plaintiff's chief argument is that the ALJ improperly rejected the opinion of her treating physician, Dr. Charles Moore, in particular the environmental restrictions he listed.  She notes that <u>Dictionary of Occupational Titles</u> Section 313-361.014 (cook) indicates that there is frequent exposure to environmental conditions

7

Carmack

other than toxic chemicals in the occupation, so that even this one set of Moore's restrictions would preclude past work.

The plaintiff's alleged onset date was in August, 2003.  As of the end of September, she was described by a heart specialist as having a history of atherosclerotic heart disease, with a recent angioplastic procedure on the diagonal branch using a cutting balloon; she was "doing well" (albeit with a grade 1/6 murmur and 1plus ankle edema), but experiencing some chest pain, cough and congestion, which was felt to be related to a pulmonary condition.  (Tr. 153).  The patient was not released from care; although there was an indication that she was told to return in six months' time, there was no documented follow-up with this doctor in the record.[1]

A consultative examination was performed in March, 2004, at which time the plaintiff complained of arthritis pain in the joints, chronic obstructive pulmonary disease, and chest pain. (Tr. 165). The doctor had access to some medical records, but apparently none after the date of the June, 2003 angioplasty. (Tr. 166).  During his own evaluation, the doctor commented that the knees and the hands were edematous, but there was no restriction of motion for any joint and the plaintiff exhibited normal grip strength and negative straight leg raising.  (Tr. 167-168). The doctor interpreted this as being essentially normal findings regarding the complaints

_____

[1]The plaintiff indicated to the consultative examiner in March, 2004, that she had a follow-up scheduled with her cardiologist for the following month. (Tr. 165).    The documentation of that visit, if any, are not included in the record.

8

Carmack

of arthritis. (Tr. 168).[2] No neurological abnormalities were evident, either. (Tr. 168). The physician obtained the results of spirometric testing, which was interpreted as normal (Tr. 168)[3] and noted normal resonance to percussion in the chest (Tr. 167); although the doctor did not feel there were associated restrictions, he did advise the patient to stop smoking cigarettes (Tr. 169). Heart sounds were normal, according to the consultative examiner,  and there appeared to be no evidence of congestive heart failure. (Tr. 167). While he did not make separate definitive separate findings or comments concerning the plaintiff's cardiovascular system complaints and only advised her to seek medical care if she experienced a return of symptoms, the consultative examiner did generally comment in another portion of his report that "this patient shows no [obvious] physical evidence for significant restriction in. . .tolerance for stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects or her ability to travel". (Tr. 168).

In December, 2003, a medical reviewer, H. T. Anzures, examined the record and completed an assessment form.  She noted that the record contained evidence of coronary artery disease and hypertension. (Tr. 210). She indicated that the

---

[2]The doctor did not specifically state whether he checked for any trigger points, which might relate to fibromyalgia.

[3]The laboratory report lists only pre-drug results, including a FEV1 of 79 percent. (Tr. 170).

9

Carmack

plaintiff could perform medium level work with restrictions on climbing.(Tr. 210-217). This assessment was issued prospectively, for June of 2004. (Tr. 210).

In March, 2004, another medical reviewer, Lynnell Carter Dupont, completed her own assessment form. She affirmed the previous assessment, citing the same diagnoses and restrictions. (Tr. 219-226).

What neither of the medical reviewers nor the consultative examiner was able to review was the evidence provided by Treating Physician Moore and his staff which, according to Barker v. Shalala,  would at least render the opinions of the non-examining medical reviewers of questionable significance.

Further, contrary to the ALJ's assertion, Treating Physician Moore did provide clinical data to support at least some of his assessments' restrictions.  Moore's progress notes from September, 2003 onward indicate repeated episodes where the plaintiff exhibited wheezes and crackles or decreased breath sounds in the lungs (Tr. 175, 186, 188), muscle tightness in the back or trigger points (Tr. 176, 181,184, 188, 245, 247, 251, 253, 255), edema in the hands or feet (Tr. 184, 251, 255), as well as occasional other findings.  A chest x-ray ordered by Moore slightly before the onset date yielded radiological evidence of emphysema. (Tr. 208). None of the other three physicians expressing opinions about the plaintiff's functional capacity had access to Moore's progress notes or the results of any chest x-ray.  None also was privy to the multiple statements provided by Moore and his assistant concerning

10

Carmack

multiple diagnoses or the severe difficulty they expected for Carmack in working (Tr. 174, 244, 307). Thus, the case must be remanded for further consideration of Moore's opinion.

This the 21st day of March, 2007.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**